<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COFUND II LLC, | Civil Action No. 16-cv-1790-SDW-LDW |
| Plaintiff, | |
| v. | **OPINION** |
| HITACHI CAPITAL AMERICA CORP., | |
| Defendant. | November 7, 2016 |

**WIGENTON**, District Judge.

Before this Court is Defendant Hitachi Capital America Corp.'s ("Defendant") Motion to Dismiss or Stay Plaintiff CoFund II LLC's ("Plaintiff") Complaint under the first-filed rule, pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, Defendant's Motion is **DENIED**.

**I.  BACKGROUND**

Plaintiff CoFund II LLC is a New Jersey company based in Fairfield, New Jersey. (Compl. ¶ 1.) Defendant Hitachi Capital America Corp., is a "Delaware corporation with its principal place of business in the State of Connecticut." (*Id.* ¶ 3.) Plaintiff entered an agreement with Defendant's Business Finance Division on December 19, 2014 (the "Intercreditor Agreement"), by which Plaintiff and Defendant "agreed on the relative priority of each party's security interest in the collateral covered by their respective agreements with [non-party Forest Capital LLC ("Forest")]."

1

(*Id.* ¶ 16; *see also* Insua Cert. Ex. F ("Intercreditor Agreement")).[1] Under the Intercreditor Agreement, Plaintiff and Defendant agreed, *inter alia*, that:

> The lien or security interest of any kind that [Plaintiff] may now have or hold in the future with respect to the CoFund Priority Collateral shall be superior to any lien or security interest that [Defendant] may now have or hereafter acquire in the CoFund Priority Collateral until [Plaintiff] terminates its UCC financing Statement [sic].[2]

(Intercreditor Agreement § 2.B.) In addition, Section 4.D. of the Intercreditor Agreement provides, in relevant part:

> If, notwithstanding the foregoing provisions of this Section 4, any party receives Collateral (including Proceeds) with respect to which it is an Inferior Creditor and there is unpaid Borrower indebtedness due to the Superior Creditor with respect to such Collateral, the Inferior Creditor receiving such Collateral shall be deemed to have received such Collateral (including Proceeds) for the use and benefit of the Superior Creditor and shall hold in trust and shall immediately turn it over to the Superior Creditor to be applied upon the indebtedness of [Forest]. . . .
>
> [Defendant] shall hold all funds representing CoFund Priority Collateral in trust for [Plaintiff].

(*Id.* § 4.D.) Moreover, in addition to these requirements, a subsequent agreement between Forest, Defendant, and non-party Manufacturers and Traders Trust Company ("M&T"), the "Blocked Account Agreement," required certain funds from Forest's clients to be deposited into a blocked account. (Compl. ¶ 19.) M&T would then transfer all funds in the blocked account to Defendant's

---

[1] Before entering the Intercreditor Agreement, Plaintiff entered an agreement with non-party Forest by which Plaintiff purchased "participations in factoring transactions that Forest made with its clients." (Compl. ¶¶ 8-10.) Under Plaintiff's agreement with Forest, Plaintiff was granted a security interest in the collateral relating to each factoring transaction. (*Id.* ¶ 10.) In addition, before Defendant entered the Intercreditor Agreement with Plaintiff, Defendant entered its own agreement with non-party Forest, by which Defendant would lend money to Forest. (*Id.* ¶ 12.) Under Defendant's agreement with Forest, Defendant was granted a security interest in certain collateral, as defined by that agreement, but was given notice that the collateral may be subject to "permitted encumbrances." (*Id.* ¶ 14.)

[2] The Intercreditor Agreement defined "CoFund Priority Collateral" as "only those amounts received by [Forest] which represent CoFund's Pro Rata interest in a Transaction as well as CoFund's Pro Rata interest in the tangible and intangible assets and property securing the obligations relating to each Transaction." (Intercreditor Agreement § 1.A.)

Bank of America account. (*Id.* ¶ 20.) Yet, through the blocked account, Defendant received, and has not turned over to Plaintiff, CoFund Priority Collateral and funds Plaintiff is entitled to under its Agreement with Forest. (*Id.* ¶ 21.) As a result, Plaintiff contends Defendant is liable for breach of the Intercreditor Agreement, breach of fiduciary duty, tortious interference, conversion, and unjust enrichment. (*Id.* ¶¶ 23-38.)

On June 24, 2016, Defendant filed its Motion now before this Court. (Dkt. No. 11.) According to Defendant, this Court should dismiss or, in the alternative, stay Plaintiff's claims under the first-filed rule because several of non-party Forest's creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland, on March 24, 2016 (neither Plaintiff nor Defendant were parties to the involuntary petition). (*See* Insua Cert. Ex. L.) The Chapter 7 proceeding was converted to a voluntary Chapter 11 bankruptcy proceeding on May 5, 2016. (*See* Insua Cert. Ex. P.) Forest's initial filings in the bankruptcy proceeding neither made a claim regarding the blocked account nor mentioned the Intercreditor Agreement. (*See* Insua Cert. Ex. L; Zucker Decl. Ex. E.) However, Defendant did submit a document asserting that Forest owed Defendant a duty of defense or indemnity related to Plaintiff's claims in this matter. (Zucker Decl. Ex. D.)

Plaintiff subsequently filed its brief in opposition to Defendant's Motion in this matter on July 5, 2016. (Dkt. No. 14.) Defendant filed its brief in reply on July 12, 2016. (Dkt. No. 15.) In its brief in reply, Defendant added to its argument the fact that Forest filed an adversary proceeding in the United States Bankruptcy Court for the District of Maryland on July 5, 2016.[3] (Def.'s Br. Reply at 3.) Plaintiff responded in a permitted sur-reply on July 19, 2016. (Dkt. No. 19.)

---

[3] In the adversary proceeding, Forest "seeks an order determining the extent, validity and priority of any liens, ownership interests or claims that attach to [Forest's] assets." (*See* Insua Supplemental Cert. Ex. U.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Iqbal* held, "to survive a motion to dismiss, a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face[]' . . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citations omitted).

In *Fowler v. UPMC Shadyside*, the Third Circuit devised "a two-part analysis." 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the complaint's factual allegations from its legal conclusions. *Id.* at 210-11. Having done that, the court must take only the factual allegations as true and determine whether the plaintiff has alleged a "plausible claim for relief." *Id.* (quoting *Iqbal,* 566 U.S. at 679).

## III. DISCUSSION

Under the first-filed rule, a district court has "'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Triangle Conduit & Cable Co. v. National Elec. Products Corp.,* 125 F.2d 1008, 1009 (3d Cir.

1942), *cert. denied,* 316 U.S. 676 (1942)). According to Defendant, this Court must dismiss or, in the alternative, stay Plaintiff's claims under the first-filed rule because the bankruptcy proceeding is addressing the same subject matter as this action: "the priority and distribution of certain of Forest's assets." (Pl.'s Br. Supp. Mot. Dismiss ("Pl.'s Br. Supp.") at 10.) In addition, Defendant contends dismissal under the first-filed rule is necessary because Defendant's agreement with Forest requires Forest to indemnify Defendant against any damages related to that agreement. (Pl.'s Br. Supp. at 10-11.) Finally, Defendant argues that although Forest's initial filings in the bankruptcy proceeding neither made a claim regarding the blocked account nor mentioned the Intercreditor Agreement, Forest's filing of an adversary proceeding on July 7, 2016, shows that the bankruptcy proceeding and this matter are "truly duplicative." (Pl.'s Br. Reply at 7.) Despite these contentions, this Court finds that the first-filed rule is inapplicable in this instance.

"To be considered parallel proceedings [under the first-filed rule,] '[t]he one must be materially on all fours with the other . . . . [T]he issues '"must have such an identity that a determination in one action leaves little or nothing to be determined in the other."'" *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007) (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir.1997)). However, "wooden application of the rule" is not required and district courts have "discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C.*, 850 F.2d at 972. Indeed, "[t]he letter and spirit of the first-filed rule . . . are grounded on equitable principles." *Id.* at 977 (first citing *Columbia Plaza Corp. v. Security Nat. Bank,* 525 F.2d 620, 621 (D.C. Cir. 1975); then citing *Kerotest Mfg. Co. v. C–O–Two Co.,* 342 U.S. 180, 183–84 (1952)).

The first-filed rule is inapplicable in this instance because, although the subject matter of this case (whether Defendant is liable to Plaintiff for breach of the Intercreditor Agreement and

under common law) is loosely related to the subject matter of the bankruptcy proceeding (the reorganization or liquidation of Forest's business), a resolution in one matter will not necessarily "leave[] little or nothing to be determined in the other." *Grider*, 500 F.3d at 334 (quoting *Smith*, 129 F.3d at 361) (internal quotation marks omitted). This case centers on Plaintiff's rights under the Intercreditor Agreement, a subject which need not be addressed in the bankruptcy proceeding. (*See* Compl. ¶¶ 16-23.) Furthermore, it is unclear how either Defendant's purported indemnification right against Forest or the fact that Forest filed an adversary proceeding three months *after* Plaintiff filed the Complaint in this matter implicate the first-filed rule. Neither of those facts make this matter "truly duplicative of the suit before [[the Bankruptcy Court]]." *Grider*, 500 F.3d at 334 n.6 (quoting *Smith,* 129 F.3d at 361). This matter does not involve the "same parties and issues" as those in the bankruptcy proceeding and, therefore, the first-filed rule may not be applied in this instance. *Triangle Conduit & Cable Co.*, 125 F.2d at 1009.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion is **DENIED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:       Clerk
cc:         Leda D. Wettre, U.S.M.J.
            Parties