**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COFUND II LLC,<br><br>    Plaintiff,<br><br>v.<br><br>HITACHI CAPITAL AMERICA CORP.,<br><br>    Defendant. | Case No. 16-cv-1790 (SDW) (LDW)<br><br>**OPINION**<br><br>November 20, 2019 |

**WIGENTON**, District Judge.

Before this Court is Defendant Hitachi Capital America Corp.'s ("Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C § 1332(a)(1). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued pursuant to Rule 78. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff CoFund II LLC ("Plaintiff" or "CoFund") entered into an agreement with non-party Forest Capital, LLC ("Forest") on January 12, 2012, by which Plaintiff purchased "participations in factoring transactions that Forest made with its clients." (Compl. ¶¶ 8–10; *see also* D.E. 83-6 (Master Participation Agreement or "MPA").) Under the MPA, Forest granted Plaintiff a first priority security interest in the collateral relating to each factoring transaction to the extent of Plaintiff's pro rata interest in those transactions. (Compl. ¶ 10.) Similarly, on

December 5, 2014, Defendant entered into its own agreement with Forest, whereby Defendant lent money to Forest. (*Id.* ¶ 12; *see also* D.E. 83-4 (Loan and Security Agreement or "LSA").) Under the LSA, Forest granted Defendant a security interest in certain collateral, as defined by that agreement, but also gave notice that the collateral may be subject to "Permitted Encumbrances," *i.e.*, Plaintiff's security interest. (Compl. ¶¶ 13–14; *see also* LSA §§ 5.1, 7.7.)

To determine the priorities of the parties' security interests in the collateral covered by their respective agreements with Forest, the parties executed an Intercreditor Agreement on December 19, 2014, by which they agreed, *inter alia*, that:

> The lien or security interest of any kind that [Plaintiff] may now have or hold in the future with respect to the CoFund Priority Collateral shall be superior to any lien or security interest that [Defendant] may now have or hereafter acquire in the CoFund Priority Collateral . . . .[1]

(*Id.* ¶ 16; D.E. 83-7 ("Intercreditor Agreement") § 2.B.) The Intercreditor Agreement also provides, in relevant part:

> If, notwithstanding the foregoing provisions of this Section 4, any party receives Collateral (including Proceeds) with respect to which it is an Inferior Creditor and there is unpaid [Forest] indebtedness due to the Superior Creditor with respect to such Collateral, the Inferior Creditor receiving such Collateral shall be deemed to have received such Collateral (including Proceeds) for the use and benefit of the Superior Creditor and shall hold it in trust and shall immediately turn it over to the Superior Creditor to be applied upon the indebtedness of [Forest]. . . .
>
> [Defendant] shall hold all funds representing CoFund Priority Collateral in trust for [Plaintiff].

(*Id.* § 4.D.) Significantly, the Intercreditor Agreement states that "[Plaintiff] shall have no recourse against [Defendant] as a result of [Forest's] failure to make any payment due to either [Defendant] or [Plaintiff]." (*Id.*)

---

[1] The Intercreditor Agreement defines "CoFund Priority Collateral" as "those amounts received by [Forest] which represent CoFund's Pro Rata interest in a Transaction as well as CoFund's Pro Rata interest in the tangible and intangible assets and property securing the obligations relating to each Transaction." (Intercreditor Agreement § 1.A.)

2

Subsequently, on December 29, 2014, Forest, Defendant, and non-party Manufacturers and Traders Trust Company ("M&T") entered into a Blocked Account Agreement. (DE. 87-13 (Blocked Account Agreement or "BAA"); *see also* Compl. ¶¶ 19–20; D.E. 87-5 ¶ 13; D.E. 89-1 ¶ 13.)[2, 3] Under the terms of the LSA and BAA, Forest and/or Forest's clients deposited all moneys that Forest's clients paid/owed to Forest into a blocked M&T account. (LSA § 8.11(a); *see also* Compl. ¶ 19; D.E. 87-5 ¶ 13; D.E. 89-1 ¶ 13.)[4] Also under the terms of the BAA, Defendant had "sole dominion and control" of the blocked account and Forest was unable to withdraw any moneys from the blocked account to pay Plaintiff. (D.E. 87-5 ¶ 14 (quoting BAA ¶ 4(b)); D.E. 89-1 ¶ 14.) Instead, M&T "transfer[red] . . . all available funds on deposit in the Blocked Account to [Defendant's account]" at Bank of America in Chicago, Illinois. (D.E. 87-5 ¶ 14 (quoting BAA ¶ 4(a)); D.E. 89-1 ¶ 14.)

Through this blocked account, Defendant received funds that Plaintiff claims it is entitled to under the MPA. (D.E. 87-5 ¶ 15.) Defendant has not turned over these funds to Plaintiff, (*id.*), allegedly in breach of the Intercreditor Agreement, which requires Defendant to "hold all funds

---

[2] The BAA was executed pursuant to the LSA. (*See* BAA at 1 ("WHEREAS, pursuant to that certain Loan Agreement, to be entered into on or about December 5, 2014 . . . .").)

[3] Citations to "D.E. 83-2" refer to Defendant's Statement of Undisputed Material Facts and the citations contained therein. Citations to "D.E. 87" refer to Plaintiff's Responsive Statement of Material Facts and the citations contained therein. Citations to "D.E. 87-5" refer to Plaintiff's Supplemental Statement of Disputed Material Facts and the citations contained therein. Citations to "D.E. 89-1" refer to Defendant's Response to Supplemental Statement of Disputed Material Facts and the citations contained therein. Pin cites are to original document page or paragraph numbers where available.

[4] LSA § 8.11(a) specifies that Defendant's "dominion of funds" comprising "all payments due [to Forest]" from "all Customers" is a requirement of the loan provided in the LSA. LSA § 8.11(a) ("The loan shall be on dominion of funds . . . . [Forest] shall have no right to withdraw any funds from [the blocked account], all of [Forest's] funds therein belong to [Defendant]."). The BAA implements this provision by requiring that "the Blocked Account shall be under the sole dominion and control of [Defendant]." (BAA ¶ 4(b).)

representing CoFund Priority Collateral in trust for [Plaintiff]." (Compl. ¶ 21; Intercreditor Agreement § 4.D.)[5, 6]

Plaintiff brought this action on March 31, 2016, claiming that Defendant is liable for breach of contract (First Count), breach of fiduciary duty (Second Count), tortious interference (Third Count), conversion (Fourth Count), and unjust enrichment (Fifth Count). (Compl. ¶¶ 23–38.) Defendant filed the instant motion on April 26, 2019, and all papers were timely filed. (D.E. 83, 87, 89.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt

---

[5] Plaintiff notified Forest that it was in default under the MPA on December 24, 2015. (D.E. 83-8; *see also* D.E. 87 ¶ 26.) Plaintiff also sent a letter to Defendant on March 21, 2016, requesting an immediate accounting of all collateral Defendant had received from Forest since December 9, 2014, and the immediate turnover of CoFund Priority Collateral. (D.E. 83-9; *see also* D.E. 87 ¶ 27.)

[6] On March 24, 2016, certain junior creditors commenced bankruptcy proceedings against Forest. (D.E. 83-2 ¶ 29, D.E. 87 ¶ 29); *see also In re Forest Capital, LLC*, Case No. 16-13850 (D. Md. Bankr.). The bankruptcy court approved the sale of substantially all of Forest's assets on May 31, 2016. (D.E. 87-2; *see also* D.E. 83-2 ¶ 30, D.E. 87 ¶ 30.) Forest commenced an adversary case on July 7, 2016 to determine the existence, validity, and priority of various creditors' rights to the assets of the bankruptcy estate. (D.E. 83-2 ¶ 32, D.E. 87 ¶ 32); *see also Forest Capital, LLC v. Hitachi Cap. Am. Corp.*, Adv. No. 16-00326 (D. Md. Bankr.). The adversary case settled on March 15, 2019, with Plaintiff and Defendant both receiving moneys. (D.E. 87-4; *see also* D.E. 83-2 ¶ 33, D.E. 87 ¶ 33.)

as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Rule 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue

for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III. DISCUSSION

#### a. Choice-of-Law

In diversity cases, federal courts apply the choice-of-law rules of the forum state, which in this case is New Jersey. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). "[O]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice." *Id.* at 183–84 (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). *See, e.g.*, *Global Empire Corp. v. Flower Tech Ctr., Inc.*, No. 18-8795, 2018 WL 6829086, at *3 (D.N.J. Dec. 21, 2018) (upholding a choice-of-law provision between "two sophisticated commercial entities"). Here, the parties—two sophisticated companies—agreed that "[t]he validity of this [Intercreditor] Agreement, its construction, interpretation and enforcement, and the rights of the parties hereto shall be determined under, governed by, [and] construed in accordance with the internal laws of the State of Michigan. . . ." (Intercreditor Agreement ¶ 16.) Therefore, this Court will apply Michigan law as contemplated by the Intercreditor Agreement.[7]

---

[7] The parties' choice-of-law is to be respected unless (a) Michigan has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) the application of Michigan law would be contrary to a fundamental policy of New Jersey. *See Collins*, 874 F.3d at 184 (quoting Restatement (Second) of Conflicts of Laws § 187(2) (Am. Law Inst. 1969)). Neither exception applies here. The face of the Intercreditor Agreement indicates that Defendant's principal place of business is located in Michigan and, as discussed below, the application of Michigan law would not be contrary to a fundamental New Jersey policy because Michigan law is similar in material respects to New Jersey law and the Court would reach the same conclusion under either forum's rules.

b. Breach of Contract Claim (Count One)

"Under Michigan law, the elements of a breach of contract claim are the following: (1) a contract existed between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 2d 815, 818 (E.D. Mich. 2007) (citation omitted).[8] Here, Plaintiff claims that Defendant, the Inferior Creditor with respect to CoFund Priority Collateral, violated § 4.D of the Intercreditor Agreement when it received funds pursuant to the LSA and BAA but did not turn over those funds to Plaintiff.

*i. "No Recourse" Bar*

In its defense, Defendant argues that it is entitled to summary judgment because Plaintiff's losses all flow from Forest's failure to make payments due to Plaintiff and, thus, Plaintiff has no recourse under the express terms of the Intercreditor Agreement. (D.E. 83-1 at 23–26 (citing Intercreditor Agreement § 4.D ("[Plaintiff] shall have no recourse against [Defendant] as a result of [Forest's] failure to make any payment due to either [Defendant] or [Plaintiff].")).)

However, Defendant's reliance on the "no recourse" language is unavailing because it sidesteps Plaintiff's actual allegation. Plaintiff contends that, pursuant to the LSA and BAA, Defendant had "sole dominion and control" over funds that belonged to Plaintiff under the terms of the MPA, and instead of holding those funds in trust for Plaintiff and then turning them over to Plaintiff, as it was required to do under the express terms of the Intercreditor Agreement, Defendant used those funds to satisfy Forest's indebtedness to itself. (Compl. ¶¶ 19–23; BAA ¶ 4(b); *see also* LSA § 8.11(a); D.E. 87-5 ¶ 15.) In other words, Plaintiff's claim is that Defendant

---

[8] To state a claim for breach of contract under New Jersey law, Plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted).

7

violated an express provision of the Intercreditor Agreement, not that Forest failed to make a payment. (Compl. ¶¶ 18–23.) To the extent that Forest's failure to make a payment to Plaintiff is the underlying harm that Plaintiff suffered, such harm only occurred because (1) under the BAA and LSA, Defendant required Forest to deliver funds due to Plaintiff to Defendant instead, and (2) Defendant allegedly breached the Intercreditor Agreement with respect to the use of those funds. (*See* Compl. ¶¶ 18–23; D.E. 87-5 ¶ 15; LSA § 8.11(a); BAA ¶ 4.)

Thus, because Plaintiff's breach of contract claim is premised on Defendant's alleged breach of the express terms of the Intercreditor Agreement and not Forest's failure to make a payment, the "no recourse" provision does not apply and Plaintiff is not barred from bringing this claim.

*ii. Impossibility and Impracticability Defenses*

In the alternative, Defendant argues that it is excused from performance under the Intercreditor Agreement because performance is impossible or impracticable. Michigan courts have applied the affirmative defenses of impossibility and impracticability interchangeably. *See Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 702 (6th Cir. 2017). The defense of impossibility provides that "'when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated." *Bissell v. L. W. Edison Co.*, 156 N.W.2d 623, 626 (Mich. Ct. App. 1967) (citation omitted). Although absolute impossibility is not required, there must be a showing of "impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." *Id.* (citation omitted).

In support of this defense, Defendant points to evidence in the record that both parties relied on Forest to identify the balance of CoFund Priority Collateral, which Forest failed to properly do,

8

making it impossible to track and understand what constituted Plaintiff's collateral. (D.E. 83-10 at 2–5; *see also* D.E. 87-5 ¶¶ 15, 26.) However, the record also reflects that (1) Forest sent Defendant monthly balance sheets; (2) these balance sheets identified the composition (*i.e.*, corresponding accounts or invoices) of payments going into the blocked account; and (3) both Forest and Plaintiff provided Defendant with actual knowledge of participations that comprised CoFund Priority Collateral by December 2015. (*See* D.E. 87-5 ¶¶ 16–19, 34; D.E. 87-6 ¶ 36.)

Defendant also points to evidence in the record that there was at least one other creditor making claims against the same funds as Plaintiff and argues that it was impracticable for Defendant to disaggregate the priorities of the claims. (*See* D.E. 87-33; D.E. 83-10 at 5.) However, the record also shows that the interests of other creditors may have been unrelated to Plaintiff's interests and, in any case, did not prevent Defendant from remitting moneys to itself. (*See* D.E. 87-5 ¶¶ 15, 34; D.E. 87-6 ¶ 36.)

In view of the foregoing, the record presents this Court with genuine issues of material facts as to whether Defendant's alleged breach of the Intercreditor Agreement is excused. Therefore, Defendant's Motion for Summary Judgment as to Count One is denied.

### c. Tort Claims (Counts Two – Four)

In addition to its breach of contract claim, Plaintiff brings claims for breach of fiduciary duty, tortious interference, and conversion. However, under Michigan law, the economic loss doctrine limits tort actions that seek to recover economic damages resulting from commercial transactions. *IBX Jets, LLC v. Paradigm Jet Mgmt., Inc.*, Civ. No. 16-229, 2017 WL 3168930, at *4 (W.D. Mich. June 9, 2017) (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). The doctrine provides that "[w]here a purchaser's expectations in a sale are frustrated, his remedy is said to be in contract alone, for he has suffered

only economic losses." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 542 (Mich. Ct. App. 1995) (internal quotation marks and citation omitted).[9]

Michigan courts have applied the economic loss doctrine in various commercial contexts to bar recovery in tort when damages are recoverable through contract claims. *See, e.g.*, *IBX Jets*, 2017 WL 3168930, at *5 (applying the economic loss doctrine to bar tort claims related to contracts for services where "the damages [we]re allegedly sustained by commercial businesses, the contracts were entered into for commercial purposes, the claimed losses [we]re economic in nature, and the facts underlying the parties' tort and contract claims [we]re not separate and distinct"). This is true even where plaintiffs alleged a fiduciary relationship between the parties. *See, e.g.*, *Scarff Bros. v. Bischer Farms, Inc.*, 546 F. Supp. 2d 473, 488 (E.D. Mich. 2008), *amended on other grounds*, No. 04-10071, 2008 WL 2115258 (E.D. Mich. May 19, 2008), *vacated and remanded on other grounds*, 386 F. App'x 518 (6th Cir. 2010) (dismissing plaintiff's breach of fiduciary duty claim as "foreclosed by Michigan's economic loss doctrine"); *In re Trade Partners, Inc. Inv'rs Litig.*, No. 1:07-MD-1846, 2008 WL 3875396, at *17 (W.D. Mich. Aug. 15, 2008) (dismissing plaintiff's claim for breach of fiduciary duty on summary judgment as "barred by the economic loss doctrine").[10]

Applying the economic loss doctrine, Michigan courts have granted summary judgment on tort claims that were "inextricably tied to [a] contract relationship" between the parties where the

---

[9] Similarly, the New Jersey economic loss doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract.'" *Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*, No. 15-7105, 2017 WL 1752951, at *2 (D.N.J. May 4, 2017) (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)). *See also Stryker Sales Corp. v. Siroonian*, Civ. No. 15-01161, slip op. at 10–11 (W.D. Mich. Mar. 6, 2017) (noting on summary judgment that New Jersey and Michigan have similarly broad versions of the economic loss doctrine).

[10] New Jersey district courts have also applied the economic loss doctrine to dismiss tort claims that are tied to a contract relationship, even where the plaintiff alleged a fiduciary relationship. *See, e.g.*, *Coleman v. Deutsche Bank Nat. Tr. Co.*, Civ. No. 15-1080, 2015 WL 2226022, at *4 (D.N.J. May 12, 2015); *Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, Civ. No. 12-7141, 2013 WL 6816394, at *5–10 (D.N.J. Dec. 23, 2013).

duties allegedly violated were the same duties as those owed under the parties' contracts. *See, e.g.*, *Stryker Sales Corp. v. Siroonian*, Civ. No. 15-1161, slip op. at 11–12 (W.D. Mich. Mar. 6, 2017); *In re Trade Partners*, 2008 WL 3875396, at *17.

Here, Plaintiff's tort claims allege that Defendant's refusal to turn over CoFund Priority Collateral breaches Defendant's fiduciary duty to Plaintiff, tortiously interferes with Plaintiff's security interest in the CoFund Priority Collateral, and improperly converts the CoFund Priority Collateral. (Compl. ¶¶ 24–35.) Because the claims are largely based on the same facts and legal duties giving rise to the breach of contract claim, the economic loss doctrine bars Plaintiff's tort claims. Therefore, Defendant's Motion for Summary Judgment as to Counts Two, Three, and Four is granted.

### d. Quasi-Contract Claim (Count Five)

Finally, Plaintiff pleads unjust enrichment, a quasi-contract theory of relief. Under Michigan law, a claim for unjust enrichment cannot be sustained where the parties have a valid and enforceable contract. *See Mersen USA—Midland-MI Inc. v. Graphite Machining Servs. & Innovations, LLC*, No. 12-10961, 2013 WL 2250154, at *2 (E.D. Mich. May 22, 2013) ("Under Michigan law, a contract will be implied to prevent unjust enrichment only if there is no express contract covering the same subject matter." (quoting *Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App. 2009)) (internal quotation marks omitted)).[11]

Here, there is no question as to the validity of the Intercreditor Agreement. Plaintiff pleaded its existence and validity in the Complaint, and those allegations are undisputed by

---

[11] Similarly, under New Jersey law, "[q]uasi-contract liability will not be imposed [] if an express contract exists concerning the identical subject matter. The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir. 1983); *see also Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015).

Defendant. (*See* Compl. ¶¶ 16–18; Ans. (D.E. 22) ¶¶ 16–18.) Plaintiff's unjust enrichment claim also covers the same subject matter as its breach of contract claim. (*See* Compl. ¶¶ 36–37.) Thus, Plaintiff's unjust enrichment claim cannot be sustained. *See, e.g.*, *Liggett Rest. Grp., Inc. v. City of Pontiac*, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003) (affirming dismissal of unjust enrichment claim because "a contract cannot be implied when an express contact already addresses the pertinent subject matter").[12] Therefore, Defendant's Motion for Summary Judgment on Count Five is granted.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:      Clerk
cc:        Hon. Leda D. Wettre, U.S.M.J.
           Parties

---

[12] Neither can Plaintiff's unjust enrichment claim be sustained under New Jersey law. *See Senft v. Fireman's Fund Ins. Co.*, Civ. No. 14-07805, 2015 WL 2235098, at *5 (D.N.J. May 12, 2015) (dismissing unjust enrichment claim because complaint alleged parties had valid contract between them that governed their "rights and obligations").